IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| MICHAEL W. INGRAM, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| ) | CASE NO. 3:09-0037 |
| vs. ) | JUDGE TRAUGER / KNOWLES |
| ) | |
| ) | |
| DARON HALL, SHERIFF, et al., ) | |
| ) | |
| Defendants. ) | |

# REPORT AND RECOMMENDATION

## I. Introduction and Background

This matter is before the Court upon a Motion to Dismiss filed by Defendants Sheriff Daron Hall, Jail Administrator Austin Bodie, Sergeant Curtis Barnes, Sergeant Barbara Freeman, and Sergeant Cristofer McCutcheon ("Defendants"). Docket Entry No. 42. As part of that Motion, Defendants have contemporaneously submitted a supporting Memorandum of Law. *Id.*

Plaintiff has filed a Response (Docket Entry No. 46) and a supplemental Response (Docket No. 49).

Plaintiff, an inmate housed at the Criminal Justice Center in Nashville, Tennessee, filed this pro se action pursuant to 42 U.S.C. § 1983, alleging that his rights were violated because he was not served appropriate food while in Jail and therefore did not maintain an appropriate caloric intake or receive proper nutrition. Docket Entry No. 1. Specifically, Plaintiff avers that he is a vegetarian who is allergic to navy beans, white beans, and pinto beans, who informed jail

1

intake officials, including the intake nurse, of these facts during the booking process, but that his "proper vegan dietary needs" were not met.[1] *Id.* Plaintiff argues that his meals were prepared "lacking one or more major components of a balanced vegan diet," and that he was not receiving sufficient protein. *Id.* Plaintiff avers that he was served milk only three days per week, and that the other drink he was served (which was said to be a milk equivalent in calcium) was "watered down" and improperly mixed. *Id.* Plaintiff also argues that his overall caloric intake was insufficient because lettuce, oranges, or celery would "often" be substituted for a carbohydrate item. *Id.* Plaintiff further avers that he was, for a while, served bologna and cheese sandwiches, which were then changed to just cheese sandwiches, which eventually constipated him. *Id.* Plaintiff complains of being served beans and potatoes, since he is allergic to beans and since "potatoes have no protein." *Id.* Plaintiff also complains that the rice and pasta he received were overcooked and served plain, thereby depriving him of nutritional value. *Id.* Plaintiff additionally argues that the meat substitutes served to him for dinner also lacked caloric and nutritional value. *Id.* Plaintiff contends that he complained daily and filed numerous grievances, all to no avail. *Id.*

Plaintiff sues Davidson County Sheriff Daron Hall, Jail Administrator Austin Bodie,

---

[1] Plaintiff sometimes refers to himself as a "vegetarian" (who does not eat red meat and who is allergic to navy beans, white beans, and pinto beans), and sometimes refers to himself as a "vegan." Docket No. 1, p. 4. Plaintiff does not explain exactly what he means when he uses these terms. As the Court understands it, a vegetarian is "a person who does not eat or does not believe in eating meat, fish, [or] fowl," while a vegan is "a vegetarian who omits all animal products from the diet." Random House Webster's Unabridged Dictionary, Second Ed. 1998. As so defined, a true "vegan" would not eat honey, eggs, or cheese, nor would he drink milk. As Defendants point out, Plaintiff acknowledges in his Complaint that he eats cheese, and, apparently, eggs as well, and he drinks milk. Docket No. 1, p. 5-6. For the sake of consistency, the Court will refer to Plaintiff as a "vegetarian."

ABL Food Services, Inc., Food Service Director Jerry Mathis, Food Service Director "V. Dulin," Sergeant Barbara Freeman, Sergeant Cristofer McCutcheon, and Sergeant Curtis Barnes in their individual and official capacities,[2] alleging in part as follows:

> Sheriff Daron Hall bears responsibility in this complaint because it is his legal obligation to assure the welfare of all inmates in each institution under his jurisdiction. [Plaintiff] even brought the situation to his attention via letter and grievance, yet no resolution has been reached.
>
> Defendant Austin Bodie bears responsibility in this complaint as the Jail Administrator of CJC because it is his responsibility to assure the well-being of all inmates in custody of CJC. [Plaintiff] filed several grievances, wrote him a letter and met with Mr. Bodie twice about this issue. Even after meeting with Mr. Bodie, this situation remains un-resolved, as it is on the present date (12-04-08).
>
> Defendant ABL Food Services, Inc., bears primary responsibility for this complaint as they are contracted to provide for the proper nutritional needs of DCSO inmates. They, corporately, and their employees collectively and individually have acted with deliberate disregard in denying proper nutrition for [Plaintiff].
>
> _____, corporate official of ABL, is responsible for providing supervision for their Food Services Directors Mathis and Dulin, and bears responsibility via personal negligence in providing said supervision resulting in months of improper nutrition.
>
> Jerry Mathis, Food Service Director for ABL at CJC bears responsibility in this complaint because he is the person who should make certain nutritional needs are being met. He has responded to grievances from [Plaintiff] and even acknowledged the problem existed as late as May 13, 08.
>
> V. Dulin, Food Service Director for ABL, bears responsibility in this complaint because like Jerry Mathis, he is primarily

---

[2]ABL Food Services, Inc., Food Service Director Jerry Mathis, and Food Service Director "V. Dulin" are not parties to the instant Motion.

3

> responsible to assure proper nutrition is provided. As with his
> predecessor, [Plaintiff] wrote grievances and received
> contradictory responses from Mr. Dulin. [Plaintiff] met with . . .
> Austin Bodie some time in June. Dulin said he would follow-up
> and has yet to do so.
>
> Sgt. Barnes, a shift supervisor for the 2nd shift on the 2nd floor at
> CJC bears responsibility because he basically abdicated his
> responsibility to assure [Plaintiff] was provided with proper
> nutrition. He exhibited a very callus disregard as to whether
> [Plaintiff] received proper nutrition whenever [Plaintiff]
> approached him about the problem, dismissing his concerns with a
> derisive laugh. Barnes is no longer assigned to 2nd floor.
>
> Sgt. McCutcheon, a 1st shift supervisor on the 2nd floor at CJC
> bears responsibility because he also abdicated his responsibility to
> assure [Plaintiff] received or was provided proper nutrition. He
> exhibited his callous disregard for [Plaintiff's] nutritional needs in
> presence of Officers Davis and Temple with a comment about
> [Plaintiff] being "an ungrateful S.O.B." because he, [Plaintiff],
> wasn't happy with the way his meal had been shorted.
>
> Sgt. Freeman, 2nd shift supervisor on the 2nd floor at CJC who [*sic*]
> bears responsibility because she ultimately abdicated her
> responsibility to assure [Plaintiff] was provided proper nutrition.
> She started out with an attitude of being helpful, but over time has
> lost patience with the whole situation and can no longer be
> bothered. Her basic response has been "file a grievance," or "I
> don't want to hear it - go through the chain of command." If a
> sergeant isn't part of the chain, who is? Most recently Sgt.
> Freeman told [Plaintiff's] officer, Cash, "I'm about f_ _ _ _ _ g
> tired of dealing with [Plaintiff's] issue." This comment was
> overheard by [Plaintiff] as he was passing back through the door to
> his unit.

Docket Entry No. 1(blank spaces indicated above in original).

Plaintiff seeks declaratory and injunctive relief, compensatory and punitive damages, costs, a jury trial, and any other relief the Court deems just, proper, and equitable. *Id.*

Defendants filed the instant Motion to Dismiss and supporting Memorandum of Law denying liability and asserting that they are qualifiedly immune. Docket Entry No. 42.

Defendants argue that individual liability cannot be predicated on respondeat superior, and that Plaintiff has failed to allege sufficient personal involvement by Defendants in the conduct that allegedly violated his rights. *Id.* Defendants assert that, to the extent that Plaintiff has alleged Defendants' personal involvement, that personal involvement did not rise to the level of a violation of Plaintiff's Eighth Amendment rights. *Id.* Defendants also contend that the official capacity claims against them should be dismissed because those claims are appropriately considered as claims against the Metropolitan Government, which cannot be liable because Plaintiff has failed to allege that he was damaged by an official governmental custom, practice, or policy. *Id.*

Plaintiff filed a Response, arguing that he filed daily grievances and "everyone at CJC knew," but no one helped him; that he was regularly served bologna, cheese, and beans; and that he was additionally deprived of protein because he was served milk only three days per week. Docket Entry No. 46. Plaintiff also filed a supplemental Response, essentially arguing that he is entitled to be furnished "adequate food" and adequate nutrition, but that he has received such an inadequate diet that he has "lost weight and suffered hunger pangs and mental anguish." Docket No. 49, p. 2.

For the reasons set forth below, the undersigned recommends that Defendants' Motion to Dismiss be GRANTED.

## II. Facts[3]

---

[3] The following "facts" are derived from Plaintiff's Complaint and are taken as true for the purposes of Defendants' Motion to Dismiss.

5

Plaintiff, an inmate at CJC, is a vegetarian.  Plaintiff informed intake officials of this fact during the intake process.  Plaintiff specifically informed the intake nurse, *inter alia*, that he did not eat red meat, and that he was allergic to navy beans, white beans, and pinto beans.

Plaintiff received meal trays that differed from the "regular" meal trays.  On Plaintiff's meal tray, a double portion of beans was often substituted for meat, and lettuce was often substituted for carbohydrate items.

Plaintiff's typical breakfast at CJC included oatmeal or grits, two pancakes with syrup or two sections of eggo waffles with syrup or scrambled eggs with two pieces of bread, coffee, and milk or milk equivalent drink.  Plaintiff received milk three days per week, and a milk equivalent drink the remainder of the week.

Plaintiff's typical lunch at CJC included one bologna and cheese sandwich on white bread (which was changed to a cheese only sandwich), one peanut butter and jelly sandwich on white bread, an orange, and celery sticks.  The orange and celery sticks were substitutions for tortilla strips and cake, which were served on "regular" tray meals.

Plaintiff's typical dinner at CJC included a double portion of beans, rice, potatoes, or pasta as a meat substitute, a vegetable such as slaw, corn bread, cake, and an instant drink.

When Plaintiff complained about his food, he was instructed to file a grievance, which he did.  ABL responded to Plaintiff's grievances by insisting that his dietary needs were being supervised by licensed dieticians or by reporting that the grieved problem had been solved.

### III.   Analysis

**A.  Standard of Review:  Motion to Dismiss**

Fed. R. Civ. P. 12(b)(6) provides that a complaint may be dismissed if it fails to state a

6

claim upon which relief can be granted. The purpose of this rule is to permit a defendant to test whether, as a matter of law, the plaintiff is entitled to relief even if everything alleged in the complaint is true. *Mayer v. Mylod*, 988 F.2d 635, 638 (6th Cir. 1993).

In order to state a claim upon which relief can be granted, a complaint must contain either direct or inferential allegations respecting all material elements to sustain a recovery under some viable legal theory. *Mezibov v. Allen*, 411 F.3d 712, 716 (6th Cir. 2005). Conclusory allegations or legal conclusions masquerading as factual allegations will not suffice. *Id.* A complaint containing a statement of facts that merely creates a suspicion of a legally cognizable right of action is insufficient. *Bell Atlantic Corp. V. Twombly,* 127 S.Ct. 1955, 1965 (2007). The "[f]actual allegations must be enough to raise a right to relief above the speculative level"; they must "state a claim to relief that is plausible on its face." *Id.* at 1965, 1974. *See also, Ass'n of Cleveland Fire Fighters v. City of Cleveland*, 502 F.3d 545, 548 (6th Cir. 2007).

The Court is required to construe the complaint in the light most favorable to the plaintiff and to accept all well-pleaded allegations of fact as being true. *Collins v. Nagle*, 892 F.2d 489, 493 (6th Cir. 1989). Despite the Court's responsibility to liberally construe the complaint in the plaintiff's favor, "more than bare assertions of legal conclusions is ordinarily required to satisfy federal notice pleading requirements." *Scheid v. Fanny Farmer Candy Shops, Inc.*, 859 F.2d 434, 436 (6th Cir. 1988). Accordingly, the Court does not have to accept as true mere legal conclusions and unwarranted inferences of fact. *Morgan v. Church's Fried Chicken*, 829 F.2d 10, 12 (6th Cir. 1987).

Finally, while pro se complaints are to be construed liberally (*Haines v. Kerner*, 404 U.S. 519, 520 (1972)), that liberality does not allow a court to conjure up unpled facts. *McFadden v.*

*Lucas*, 713 F.2d 143, 147 n.4 (5th Cir. 1983); *Slotnick v. Staviskey*, 560 F.2d 31, 33 (1st Cir. 1977), *cert. denied*, 434 U.S. 1077 (1978).

## B.  42 U.S.C. § 1983

Plaintiff alleges violations of his Eighth Amendment rights pursuant to 42 U.S.C. § 1983. *See* Docket Entry No. 1.  Section 1983 provides, in part, that:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress...

Thus, in order to state a claim under § 1983, a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law.  *West v. Atkins*, 487 U.S. 42, 48, 108 S. Ct. 2250, 2254-55 (1988), *citing Parratt v. Taylor,* 451 U.S. 527, 535, 101 S. Ct. 1908, 1913, 68 L. Ed. 2d 420 (1981) (overruled in part on other grounds, *Daniels v. Williams,* 474 U.S. 327, 330-331, 106 S. Ct. 662, 88 L. Ed. 2d 662 (1986)); *Flagg Bros., Inc. v. Brooks,* 436 U.S. 149, 155, 98 S. Ct. 1729, 1733, 56 L. Ed. 2d 185 (1978).  The traditional definition of acting under color of state law requires that the defendant in a § 1983 action have exercised power "possessed by virtue of state law and made possible only because the wrongdoer is clothed with the authority of state law."  *Id.* at 49, 108 S. Ct. 2255*, quoting United States v. Classic,* 313 U.S. 299, 326, 61 S. Ct. 1031, 1043, 85 L. Ed. 1368 (1941).

## C.  The Case at Bar

As has been noted, Plaintiff alleges that Defendants violated his Eighth Amendment

8

rights pursuant to 42 U.S.C. § 1983.  Plaintiff sues Defendants in their individual and official capacities, arguing primarily that these Defendants had a "responsibility to assure" that Plaintiff's proper nutritional needs were being met, but failed to do so.

Plaintiff's legal claim is succinctly stated as follows:

> The denial of proper nutrition adequate to his needs violated Plaintiff Michael W. Ingram's rights and constituted an on-going example of cruel and unusual punishment under the 8th Amendment to the U.S. Constitution."

Docket No. 1, p. 12.

Plaintiff subsequently filed a "Motion for Amended Complaint," which stated in part as follows:

> This Amended Complaint is to only add-in-to the Complaint that I have suffered with weakness due to lack of nutrition.  I have also had weight gains & weight losses.  Three times this year I have had sickness with a stomach viruse [*sic*] due to molded bread, sour milk etc. etc. . . .
>
> My Eighth Amendment has been violated due to the imposed duties on prison and jail officials must provide humane conditions of confinement.  These officials need to ensure inmates receive proper "food," clothing, shelter and "medical care."

Docket No. 10, p. 1-2.

Because none of Defendants had filed a responsive pleading, the Court considered Plaintiff's Motion to Amend as an Amended Complaint.  Docket No. 11.

Initially, the Court notes that, while Plaintiff's claims are based upon the Eighth Amendment, and while the instant Motion discusses Plaintiff's Eighth Amendment claims, the Eighth Amendment itself does not apply (at least directly) in this action because Plaintiff is a pretrial detainee, not a sentenced prisoner.  *See*

9

*http://dcso.nashville.gov/inmatesearch/pages/Search.faces* (accessed June 16, 2009).[4] As the Sixth Circuit has stated, citing precedent from the U.S. Supreme Court, the Eighth Amendment does not apply to pretrial detainees; rather, they "are shielded from cruel and unusual punishments by the Fourteenth Amendment's Due Process Clause, . . . which provides similar if not greater protections than the Cruel and Unusual Punishments Clause . . . ." *Spencer v. Bouchard,* 449 F.3d 721, 727 (6th Cir. 2006). The *Spencer* Court further stated:

> It is undisputed that the treatment a prisoner receives in prison and the conditions under which he is confined are subject to scrutiny under the Eighth Amendment. . . . The Eighth Amendment imposes duties on [prison] officials who must provide humane conditions of confinement; [these] officials must ensure that inmates receive adequate food, clothing, shelter, and medical care, and must take reasonable measures to guarantee the safety of the inmates. . . . An Eighth Amendment conditions-of-confinement claim has two elements. First, the deprivation allege must be, objectively, sufficiently serious; a prison official's act or omission must result in the denial of the minimal civilized measure of life's necessities. . . . Second, the prison official's state of mind [must be] one of deliberate indifference to inmate health or safety.

*Id.* at 727-28 (internal quotations and citations omitted).

The Court, however, need not reach issues concerning Plaintiff's rights under either the Eighth Amendment or the Fourteenth Amendment, because section 1983 liability cannot be predicated upon a theory of *respondeat superior*. *Polk County v. Dodson*, 454 U.S. 312, 325, 102 S. Ct. 445, 454, 70 L. Ed. 2d 509 (1981). *See also, Monell v. Dep't of Soc. Serv.*, 436 U.S. 658, 694, 98 S. Ct. 2018, 2037, 56 L. Ed. 2d 611 (1978); *Street v. Corrections Corp. of America*, 102 F.3d 810, 818 (6th Cir. 1996). In order for Defendants to be held liable in their individual

---

[4] Additionally, Plaintiff stated in his Response to the instant Motion, "This fine government officials have "no right" to treat me the way they have even if I was a prisoner which I haven't been convicted yet." Docket No. 46, p. 2.

10

capacities, therefore, Plaintiff must demonstrate that each Defendant personally condoned, encouraged, or participated in the conduct that allegedly violated Plaintiff's rights. *Birrell v. Brown*, 867 F.2d 956, 959 (6th Cir. 1989) (citations omitted). *See also, Bellamy v. Bradley,* 729 F.2d 416, 421 (6th Cir. 1984) (*citing Hays v. Jefferson County,* 668 F. 2d 869, 872-74 (6th Cir. 1982) (The supervisor must have "at least implicitly authorized, approved or knowingly acquiesced in" the misconduct.) Conclusory allegations are not enough. *See Street,* 886 F.2d at 1479. *See also, Anderson,* 477 U.S. at 257; *Nix v. O'Malley,* 160 F.3d 343, 347 (6th Cir. 1998); *Lujan v. National Wildlife Fed'n,* 497 U.S. 871, 888, 110 S. Ct. 3177, 3188, 111 L. Ed. 2d 695 (1990); *McDonald v. Union Camp Corp.,* 898 F.2d 1155, 1162 (6th Cir. 1990). Plaintiff must establish a "causal connection between the misconduct complained of and the official sued." *Dunn v. State of Tennessee*, 697 F.2d 121, 128 (6th Cir. 1982).

Plaintiff asserts that the instant Defendants were personally involved in the conduct he alleges violates his rights in the following ways:

1. Sheriff Hall knew of Plaintiff's situation because he sent a letter and filed a grievance, yet "no resolution has been reached."

2. Jail Administrator Bodie knew of Plaintiff's situation because he sent a letter, filed several grievances, and met with Mr. Bodie twice regarding the issues, but "this situation remains un-resoved."

3. Sergeant Barnes knew of Plaintiff's situation because Plaintiff approached him about the problem, but Sgt. Barnes "exhibited a very callus [*sic*] disregard as to whether [Plaintiff] received proper nutrition" by "dismissing his concerns with a derisive laugh" when Plaintiff spoke to him about the issue.

11

4. Sergeant McCutcheon "exhibited a very callus [*sic*] disregard" for Plaintiff's nutritional needs by commenting that Plaintiff was an "ungrateful S.O.B." because he was unhappy with his meals.

5. Sergeant Freeman "started out with an attitude of being helpful, but over time has lost patience with the whole situation," telling Plaintiff, "I don't want to hear it" or "file a grievance," and commenting that she was "tired of dealing" with Plaintiff's issue.

Although Defendant Hall was the Sheriff, supervisory liability cannot be based upon the failure to act, or simply because a supervisor denied a grievance or failed to act based upon information contained in a grievance. *See Summers v. Leis,* 368 F.3d 881, 888 (6th Cir.2004); *Shehee v. Luttrell,* 199 F.3d 295, 300 (6th Cir. 1999). Merely bringing a problem to the attention of a supervisory official is not sufficient to impose liability. *See Shelly v. Johnson,* 684 F.Supp. 941, 946 (W.D. Mich.1987). Plaintiff's writing a letter and filing grievances, alone, are insufficient to demonstrate that Defendant Hall personally condoned, encouraged, or participated in the planning, preparation, and delivery of Plaintiff's meals. Accordingly, Plaintiff cannot sustain his individual capacity claim against Defendant Hall.

In addition to writing a letter and filing grievances, Plaintiff avers that he met with Defendant Brodie on two occasions to discuss the issue with him. As has been noted, bringing a problem to the attention of a supervisory official is not sufficient to impose liability. *See Shelly v. Johnson,* 684 F.Supp. 941, 946 (W.D. Mich.1987). Plaintiff, therefore, likewise fails to demonstrate that Defendant Brodie personally condoned, encouraged, or participated in the planning, preparation, and delivery of Plaintiff's meals, and Plaintiff cannot sustain his

12

individual capacity claim against him.

With regard to Defendants Barnes and McCutcheon, Plaintiff avers that they "exhibited a very callus [*sic*] disregard" for Plaintiff's nutritional needs. Specifically, Plaintiff avers that Defendant Barnes "dismiss[ed] his concerns with a derisive laugh," while Defendant McCutcheon commented that Plaintiff was "an ungrateful S.O.B." because he was unhappy with his meals. Plaintiff's allegation that these Defendants "exhibited a very callus [*sic*] disregard" for his nutritional needs by laughing derisively or by making a derogatory comment about him fails to demonstrate a causal nexus between Defendants Barnes and McCutcheon and the planning, preparation, and delivery of Plaintiff's meals. Without such nexus, Plaintiff cannot sustain his individual capacity claim against them.

As to Defendant Freeman stating, "I don't want to hear it," telling Plaintiff to "file a grievance," "los[ing] patience with the whole situation," or commenting that she was "tired of dealing" with Plaintiff's issues, Plaintiff has again failed to demonstrate a causal nexus between those things and the planning, preparation, and delivery of Plaintiff's meals. Accordingly, Plaintiff cannot sustain has individual capacity claim against Defendant Freeman.

As has been discussed above, Plaintiff has not alleged or demonstrated that any of the instant Defendants were personally involved in his meal planning, preparation, or delivery; nor has Plaintiff alleged that any of the instant Defendants have affirmatively condoned or actively encouraged the allegedly inappropriate planning, preparation, or delivery of his meals. Because Defendants did not personally deprive Plaintiff of a "right secured by the Constitution and laws of the United States," he cannot sustain his § 1983 claims against them in their individual capacities.

13

With regard to Plaintiff's official capacity claims against Defendants, in complaints alleging federal civil rights violations under § 1983, "[a]n official capacity claim filed against a public employee is equivalent to a lawsuit directed against the public entity which that agent represents." *Claybrook v. Birchwell*, 199 F.3d 350, 355 n.4 (6th Cir. 2000) (*citing Kentucky v. Graham*, 473 U.S. 159, 165, 105 S. Ct. 3099, 3105, 87 L. Ed. 2d 114 (1985)). *See also, Frost v. Hawkins County Bd. of Educ.*, 851 F.2d 822, 827 (6th Cir. 1988). As such, when a public employee is sued in his or her official capacity, the claims are essentially made against the public entity. *Id.* In order for the public entity to be subject to liability under § 1983, the plaintiff must plead allegations, *inter alia*, that an "official policy or custom was adopted by the official makers of policy with 'deliberate indifference' towards the constitutional rights of persons affected by the policy or custom." *City of Canton v. Harris*, 489 U.S. 378, 387-88, 109 S. Ct. 1197, 1204, 103 L. Ed. 2d 41 (1989). *See also, Monell v. Dept. of Soc. Serv.*, 436 U.S. 658, 690-91, 98 S. Ct. 2018, 2037, 56 L. Ed. 2d 611 (1978) (In order to find a governmental entity liable, Plaintiff must establish that (1) he / she suffered a deprivation of a constitutionally protected interest, and (2) the deprivation was caused by an official policy, custom, or usage of the local governmental entity.).

Inasmuch as Plaintiff brings the instant § 1983 claim against Defendants in their official capacities, Defendants stand in the shoes of the entity they represent (*see Claybrook*, 199 F.3d at 355 n.4), which is the Metropolitan Government. Plaintiff's claims, therefore, must be evaluated under the foregoing standards of liability. *City of Canton*, 489 U.S. at 387-88. Thus, in order to withstand this aspect of Defendants' Motion to Dismiss, Plaintiff must allege facts that show or imply the existence of a constitutionally deficient Metropolitan Government official policy or

14

custom. *Id.*

Plaintiff has not specifically alleged in his Complaint any facts relating to an official policy or custom of the Metropolitan Government that caused him injury. Absent such allegation, Plaintiff cannot sustain his official capacity claims against the instant Defendants.

## IV. Conclusion

For the foregoing reasons, the undersigned recommends that Defendants' Motion to Dismiss be GRANTED.

Under Rule 72(b) of the Federal Rules of Civil Procedure, any party has ten (10) days after service of this Report and Recommendation in which to file any written objections to this Recommendation with the District Court. Any party opposing said objections shall have ten (10) days after service of any objections filed to this Report in which to file any response to said objections. Failure to file specific objections within ten (10) days of service of this Report and Recommendation can constitute a waiver of further appeal of this Recommendation. *See Thomas v. Arn,* 474 U.S. 140, 106 S.Ct. 466, 88 L. Ed. 2d 435 (1985), *reh'g denied*, 474 U.S. 1111 (1986); 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72.

_____
E. CLIFTON KNOWLES
United States Magistrate Judge

15