IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| MICHAEL W. INGRAM, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| | ) CASE NO. 3:09-0037 |
| vs. | ) JUDGE TRAUGER / KNOWLES |
| | ) |
| | ) |
| DARON HALL, SHERIFF, et al., | ) |
| | ) |
| Defendants. | ) |

**REPORT AND RECOMMENDATION**

**I.  Introduction and Background**

This matter is before the Court upon a Motion for Summary Judgment filed by the ABL Defendants.[1] Docket No. 77. Defendants have additionally submitted the Affidavits of Richard McLaren, Vernistine Dulin, Vickie Jenkins, Dana Akins, and Babette Lanius (Attachments to Docket No. 77), copies of grievance reports (*id.*), a supporting Memorandum of Law (Docket No. 78), a Statement of Facts (Docket No. 79), Plaintiff's Response to ABL Defendants' First Set of Interrogatories (Docket No. 80), and a Supplement to their Motion that contains excerpts from Plaintiff's Deposition (Docket No. 95).

Plaintiff has filed a Response with numerous attachments (Docket No. 84), as well as a

---

[1]The ABL Defendants are ABL Food Services Inc., Vernistine Dulin, Vickie Jenkins, Dana Akins, Babette Lanius, and Richard Etchison. Plaintiff also sues Jerry Mathis and "Lon Kid." It appears that Jerry Mathis has not been served (Docket Nos. 17, 22), and he is not a party to the instant Motion. With regard to "Lon Kid," while someone accepted service for "Lon Kid" (Docket No. 69), that appears to have been a mistake, as Defendant ABL asserts that no individual named "Lon Kid" has ever worked for ABL (Docket No. 95, p. 3).

1

Supplemental Response (Docket No. 92). Plaintiff has not, however, filed a Response to Defendants' Statement of Facts, nor has he filed his own Statement of Undisputed Facts.

Plaintiff, an inmate housed at the Criminal Justice Center ("CJC") in Nashville, Tennessee, filed this pro se action pursuant to 42 U.S.C. § 1983, alleging that his rights were violated because he was not served appropriate food while in jail and therefore did not maintain an appropriate caloric intake or receive proper nutrition. Docket No. 1. Specifically, Plaintiff avers that he is a vegetarian who is allergic to navy beans, white beans, and pinto beans, who informed jail intake officials, including the intake nurse, of these facts during the booking process, but that his "proper vegan dietary needs" were not met.[2] *Id.* Plaintiff argues that his meals were prepared "lacking one or more major components of a balanced vegan diet," and that he was not receiving sufficient protein. *Id.* Plaintiff avers that he was served milk only three days per week, and that the other drink he was served (which was said to be a milk equivalent in calcium) was "watered down" and improperly mixed. *Id.* Plaintiff also argues that his overall caloric intake was insufficient because lettuce, oranges, or celery would "often" be substituted for a carbohydrate item. *Id.* Plaintiff further avers that he was, for a while, served bologna and cheese sandwiches, which were then changed to just cheese sandwiches, which eventually constipated him. *Id.* Plaintiff complains of being served beans and potatoes, since he is allergic to beans and since "potatoes have no protein." *Id.* Plaintiff also complains that the rice and pasta he received were overcooked and served plain, thereby depriving him of nutritional value.

---

[2]Plaintiff sometimes refers to himself as a "vegetarian" who does not eat red meat and who is allergic to navy beans, white beans, and pinto beans, and sometimes refers to himself as a "vegan." Plaintiff uses the terms "vegetarian" and "vegan" interchangeably, even though they do not mean the same thing. Because Plaintiff, by his own reports, consumes dairy products, the Court will refer to him as a "vegetarian," and not as a "vegan."

*Id.* Plaintiff additionally argues that the meat substitutes served to him for dinner also lacked caloric and nutritional value. *Id.* Plaintiff contends that he complained daily and filed numerous grievances, all to no avail. *Id.*

>Plaintiff sues the instant ABL Defendants because:
>
>>Defendant ABL Food Services, Inc., bears primary responsibility for this complaint as they are contracted to provide for the proper nutritional needs of DCSO inmates. They, corporately, and their employees collectively and individually have acted with deliberate disregard in denying proper nutrition for [Plaintiff].
>>
>>_____, corporate official of ABL, is responsible for providing supervision for their Food Services Directors Mathis and Dulin, and bears responsibility via personal negligence in providing said supervision resulting in months of improper nutrition.
>>
>>Jerry Mathis, Food Service Director for ABL at CJC bears responsibility in this complaint because he is the person who should make certain nutritional needs are being met. He has responded to grievances from [Plaintiff] and even acknowledged the problem existed as late as May 13, 08.
>>
>>V. Dulin, Food Service Director for ABL, bears responsibility in this complaint because like Jerry Mathis, he is primarily responsible to assure proper nutrition is provided. As with his predecessor, [Plaintiff] wrote grievances and received contradictory responses from Mr. Dulin. [Plaintiff] met with Austin Bodie some time in June. Dulin said he would follow-up and has yet to do so.

Docket No. 1 (blank in original).

Plaintiff seeks declaratory and injunctive relief, compensatory and punitive damages, costs, a jury trial, and any other relief the Court deems just, proper, and equitable. *Id.*

Defendants filed the instant Motion for Summary Judgment, supplement, and supporting materials asserting that: 1) they are not liable to Plaintiff in their individual capacities because

3

they were not directly involved in the alleged constitutional violations; 2) Plaintiff has no standing to assert claims against Babette Lanius; 3) they are not liable to Plaintiff in their individual capacities because Plaintiff did not suffer an objectively serious deprivation of care; 4) they are not liable to Plaintiff in their individual capacities because they were not deliberately indifferent to Plaintiff's health or safety; 5) they are not liable to Plaintiff in their official capacities because no underlying constitutional violation exists; and 6) they are not liable to Plaintiff in their official capacities because Plaintiff did not suffer any constitutional violation as a result of an ABL custom or policy. Docket Nos. 77 and 95.

Plaintiff filed a Response and Supplemental Response.[3] Docket Nos. 84 and 92. Plaintiff argues that:

> 1.) ABL is responsible for providing nutritional food for the detainees here at the Criminal Justice Center (C.J.C.). ABL and the staff working for ABL Management, Inc. ie: (Venestine Dulin, Jerry Mathis, Sr., Vicky Jenkins, Richard Eytchison, Dana Akins, and Babett Lanius) ABL bears the liability through their workers to provide nutritional food on a daily basis [*sic*].
>
> 2.) Venestine Dulin in her individual capacity bears the responsibility as kitchen supervisor to make sure my trays (meals) are correct every time they come up to me. Every time through the grievance process she would make sure that the problems were fixed. However, the problems have kept on [*sic*].
>   Ms. Dulin had a responsibility to watch over the kitchen staff and the inmate workers and she did not do so. Material facts.
>
> 3.) Vicky Jenkins in her individual capacity bears the responsibility as food service director to watch over the inmate workers and make sure the meals were prepared right. Ms. Jenkins should have been watching my trays to make sure the certain nutritional needs were being met. My trays, as per grievances

---

[3] As discussed above, although Plaintiff filed a Response and Supplemental Response, he did not file a Response to Defendants' Statement of Material Facts.

filed, were wrong.  Material facts.

4.) Richard Eytchison in his individual capacity bears the responsibility as food service director to watch over the inmate workers and make sure the meals were prepared right.  Mr. Eytchison should have been watching my trays on his shift to make sure the certain nutritional needs were being met.  My trays, as per grievances filed, were wrong.  Material facts.

5.) Dana Akins in her individual capacity bears the responsibility as food service director to watch over the inmate workers and make sure the meals were prepared right.  Ms. Akins should have been watching my trays on his shift to make sure the certain nutritional needs were being met.  My trays, as per grievances filed, were wrong.  Material facts.

6.) Jerry Mathis, Sr., in his individual capacity bears the responsibility as food service director to watch over the inmate workers and make sure the meals were prepared right.  Mr. Mathis should have been watching my trays on his shift to make sure the certain nutritional needs were being met.  My trays, as per grievances filed, were wrong.  Material facts.

7.) Babett Lanis in her individual capacity bears the responsibility as a certified LA licensed dietitian to make sure we detainees and inmates are given nutritional meals.  My meals have not been nutritional and most of the nutrition stopped as of June 2009 when Ms. Lanis wrote a new diet sheet for me.  Also Ms. Lanis is not a licensed dietitian here in or for the state of Tennessee.  All material facts.

8.) I the Plaintiff, Michael W. Ingram, did suffer over the past two (2) years.  When my trays came up wrong from the kitchen to the floor I would frequently, as per officers witnessing, need to suffer loss of "portions" because the kitchen staff would not replace the beans that I am allergic to.  It caused a lot of grief for not only myself but the officers as well since they had to deal with my diet on a daily basis (<u>Genuine Issue of Material Facts</u>) with all my grievances, responses, contact log reports etc. etc.  All "Genuine Material Facts, " not only from myself the Plaintiff but for the officers as well.

. . .

All in all I did suffer however, even though I never went to medical.  I suffered from headaches, weight gains and losses and

5

sickness due to the lack of nutrition.

Docket No. 92. (Underlining and capitalization original.)

For the reasons set forth below, the undersigned recommends that Defendants' Motion for Summary Judgment be GRANTED.

## II. Facts

### 1. Allegations of Plaintiff's Complaint and Amended Complaint[4]

Plaintiff, an inmate at CJC, is a vegetarian. Plaintiff informed intake officials of this fact during the intake process. Plaintiff specifically informed the intake nurse that he did not eat red meat, and that he was allergic to navy beans, white beans, and pinto beans.

Plaintiff received meal trays that differed from the "regular" meal trays. On Plaintiff's meal tray, a double portion of beans was often substituted for meat, and lettuce was often substituted for carbohydrate items.

Plaintiff's typical breakfast at CJC included oatmeal or grits, two pancakes with syrup or two sections of Eggo waffles with syrup or scrambled eggs with two pieces of bread, coffee, and milk or milk equivalent drink. Plaintiff received milk three days per week, and a milk equivalent drink the remainder of the week.

Plaintiff's typical lunch at CJC included one bologna and cheese sandwich on white bread (which was later changed to a cheese only sandwich), one peanut butter and jelly sandwich on white bread, an orange, and celery sticks. The orange and celery sticks were substitutions for tortilla strips and cake, which were served on "regular" tray meals.

---

[4]Although not in a form required by Fed. R. Civ. P. 56, the allegations of Plaintiff's Complaint and Amended Complaint provide pertinent background information and are therefore included herein.

6

Plaintiff's typical dinner at CJC included a double portion of beans, rice, potatoes, or pasta as a meat substitute, a vegetable such as slaw, corn bread, cake, and an instant drink.

When Plaintiff complained about his food, he was instructed to file a grievance, which he did.  ABL responded to Plaintiff's grievances by insisting that his dietary needs were being supervised by licensed dieticians or by reporting that the grieved problem had been solved.

## 2.  Undisputed Facts[5]

Plaintiff, a pre-trial detainee housed at the CJC, whose current incarceration at the CJC began on December 7, 2007, is a vegetarian who claims to be allergic to beans.

Defendant ABL is a Louisiana corporation that is authorized to conduct business in Tennessee, whose principal office is located in Baton Rouge, Louisiana.  No shareholders, directors, or corporate officers of ABL have ever had any direct contact with Plaintiff.

Defendant ABL is contracted to provide food to inmates at CJC.  Plaintiff has never had to seek medical attention due to his ABL provided diet at CJC.

Defendant Dulin has been an employee of Defendant ABL for approximately three (3) years, and has held the title of Senior Food Service Director for approximately ten (10) months.  Defendant Dulin's office is located at the Davidson County detention complex on Harding Place Road.  As the Senior Food Service Director at ABL, Defendant Dulin's job duties are administrative in nature.  Any interaction Defendant Dulin would have with inmates would generally involve interaction with inmates who work in the kitchen at CJC.  Defendant Dulin has interacted with Plaintiff through the written grievance process, and has spoken with Plaintiff on two occasions regarding his grievances.

---

[5]The following facts are in a form required by Fed. R. Civ. P. 56 and are undisputed.

At no time has Defendant Dulin received notice from any source that Plaintiff's health is or could be in danger from his diet at the CJC as provided by ABL. Neither has Defendant Dulin ever received notice from any source that the diet provided to Plaintiff by ABL is not in accordance with proper nutritional guidelines.

As Senior Food Service Director at ABL, Defendant Dulin is familiar with portion control standard service equipment used by ABL at CJC. ABL uses the portion control standard serving equipment at the CJC to measure the exact portions of food given to each inmate in accordance with the ABL diet assigned to that inmate.

Also as Senior Food Service Director at ABL, Defendant Dulin is familiar with the portions of food served to inmates at the CJC. The portions of food served to inmates at the CJC comply with the Portion Control Serving Equipment Standard mandated by the agreement with the Metropolitan Government of Davidson County.

Defendant Dulin, as Senior Food Service Director at ABL, is familiar with the different ABL diets assigned to inmates at the CJC. The diets are assigned by ABL's certified dietician, Babette Lanius. The portions of food that are served to each inmate at the CJC comply with the specific diet assigned to that inmate.

Defendant Jenkins had been an employee of ABL for approximately two years. While employed at ABL, Defendant Jenkins held the title of the Assistant Food Service Director for the CJC and Hill Detention Center. As the Assistant Food Service Director at ABL, Defendant Jenkins had the responsibility of ordering food items that were necessary to fulfill the written diets for inmates at the CJC and Hill Detention Center. Any interaction Defendant Jenkins would have had with inmates generally involved speaking with inmates that worked in the

kitchen at CJC. The only interaction Defendant Jenkins had with Plaintiff was to deliver his food and through the written grievance process.

At no time during her employment had Defendant Jenkins received notice from any source that Plaintiff's health was or could be in danger from his diet at the CJC as provided by ABL. Neither did Defendant Jenkins receive notice from any source that the diet provided to Plaintiff by ABL was not in accordance with proper nutritional guidelines.

Defendant Akins has been an employee of ABL for approximately less than one year. She has held the title of Kitchen Supervisor at the Davidson County Justice Center since being hired by ABL. As the Kitchen Supervisor at the Davidson County Justice Center, Defendant Akins has the responsibility of overseeing food preparation for the inmates housed at that facility. Any interaction Defendant Akins would have with inmates would generally involve interaction with inmates who work in the kitchen at the Davidson County Justice Center. Defendant Akins has never spoken with Plaintiff.

At no time has Defendant Akins received notice from any source that Plaintiff's health is or could be in danger from his diet at the CJC as provided by ABL. Neither has Defendant Akins received notice from any source that the diet provided to Plaintiff by ABL was not in accordance with proper nutritional guidelines.

Beginning April 2004, Defendant Lanius has served as the Corporate Dietician for ABL. An official of the Davidson County Justice Center is required to designate a special diet for any inmate. There are various kinds of medical diets for inmates with different medical conditions. A vegetarian diet is not a medical diet, but is a religious diet, and is normally designated by a chaplain. Someone at the Davidson County Justice Center contacted Defendant Lanius and

9

asked her to prepare a vegetarian diet with no beans for Plaintiff. Per that request, Defendant Lanius originally prepared a one-page diet.

After that diet had been placed into service, someone at the Davidson County Justice Center again contacted Defendant Lanius and asked her to prepare a diet for Plaintiff that had more variety and that did not contain beans. Accordingly, on June 23, 2009, Defendant Lanius prepared a seven (7) day Lacto-Ovo Vegetarian-No Beans Diet. That diet contained 3,135 calories, which exceeded Defendant Lanius' goal of having more than 2,700 calories in a vegetarian diet. The general population regular diet contains over 2,900 calories, but 2,700 calories is adequate for a man of Plaintiff's age. The Lacto-Ovo Vegetarian No-Beans Diet, as requested by someone at the Davidson County Justice Center is an adequate diet for the maintenance of Plaintiff's good health, and is in accordance with the standards of the dietary industry.

### III.   Analysis

**A.  Motion for Summary Judgment**

Under Fed. R. Civ. P. 56(c), summary judgment is appropriate only "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." A dispute is "genuine" only if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S. Ct. 2505, 2510, 91 L. Ed. 2d 202 (1986).

In order to prevail on a Motion for summary judgment, the moving party must meet the burden of proving the absence of a genuine issue as to material fact concerning an essential

element of the opposing party's claim. *Celotex v. Catrett*, 477 U.S. 317, 323, 106 S. Ct. 2548, 2553, 91 L. Ed. 2d 265 (1986); *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1477 (6th Cir. 1989). In determining whether the moving party has met its burden, the Court must view the evidence in the light most favorable to the nonmoving party. *Matsushita Electric Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587, 106 S. Ct. 1348, 1356, 89 L. Ed. 2d 538 (1986).

Fed. R. Civ. P. 56 provides that the nonmoving party may not rest upon the mere allegations or denials of his or her pleading, but his or her response, by affidavits or otherwise, must set forth specific facts showing that there is a genuine issue for trial. If a nonmoving party, however, fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial, there is no genuine issue as to any material fact because a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial. *Celotex*, 477 U.S. at 322-23, 106 S. Ct. at 2552, 91 L. Ed. 2d at 273. When this occurs, the moving party is entitled to summary judgment as a matter of law. *Id.* at 322-23, 106 S. Ct. at 2552; *Williams v. Ford Motor Co.,* 187 F.3d 533, 537-38 (6th Cir. 1999).

**B.  42 U.S.C. § 1983**

Plaintiff alleges violations of his Eighth Amendment rights pursuant to 42 U.S.C. § 1983. *See* Docket No. 1. Section 1983 provides, in part, that:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress...

11

Thus, in order to state a claim under § 1983, a plaintiff must allege the violation of a right secured by the Constitution or laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48, 108 S. Ct. 2250, 2254-55 (1988)*, citing Parratt v. Taylor,* 451 U.S. 527, 535, 101 S. Ct. 1908, 1913, 68 L. Ed. 2d 420 (1981) (overruled in part on other grounds, *Daniels v. Williams,* 474 U.S. 327, 330-331, 106 S. Ct. 662, 88 L. Ed. 2d 662 (1986)); *Flagg Bros., Inc. v. Brooks,* 436 U.S. 149, 155, 98 S. Ct. 1729, 1733, 56 L. Ed. 2d 185 (1978). The traditional definition of acting under color of state law requires that the defendant in a § 1983 action have exercised power "possessed by virtue of state law and made possible only because the wrongdoer is clothed with the authority of state law." *Id.* at 49, 108 S. Ct. 2255*, quoting United States v. Classic,* 313 U.S. 299, 326, 61 S. Ct. 1031, 1043, 85 L. Ed. 1368 (1941).

**C. The Case at Bar**

As has been noted, Plaintiff alleges that the ABL Defendants (ABL, Dulin, Jenkins, Eytchison, Akins, and Lanius) violated his Eighth Amendment rights pursuant to 42 U.S.C. § 1983.

> With regard to corporate Defendant ABL, Plaintiff avers that it is liable to him because:
>
>> Defendant ABL food services, Inc., bears primary responsibility for this complaint as they are contracted to provide for the proper nutritional needs of D.C.S.O. inmates. They, corporately, and their employees collectively and individually here acted with deliberate disregard in denying proper nutrition for Mr. Ingram. Corporate official of ABL, is responsible for providing supervision for their Food Service Directors Mathis and Dulin and bears responsibility via negligence in providing said supervision resulting in months of improper nutrition.

Docket No. 66, Amended Complaint.

12

As an initial matter, Defendant ABL, as a corporation that contracts with the State to provide food to inmates at the CJC, is considered a state actor for purposes of §1983. *See Lucas v. Aramark Corrections Food Service*, 2010 WL 59194, 1 (W.D.Ky. 2010), *citing Hicks v. Frey,* 992 F.2d 1450, 1458 (6th Cir.1993); *West v. Atkins,* 487 U.S. 42, 54 (1988). Plaintiff seeks to impose liability on corporate Defendant ABL based on the conduct of its employees. A corporation, however, cannot be vicariously liable under § 1983 for the acts of an employee. *See, e.g., Street v. Corr. Corp. of Am.,* 102 F.3d 810, 818 (6th Cir.1996) (*citing Harvey v. Harvey,* 949 F.2d 1127, 1129-30 (11th Cir.1992), for the proposition that a corporation "cannot be held liable under section 1983 on a respondeat superior or vicarious liability basis," since though *Monell v. Department of Social Serv.,* 436 U.S. 658 (1978), "involved a municipal corporation ... every circuit to consider the issue has extended the holding to private corporations as well"). Accordingly, Plaintiff fails to state a valid § 1983 action against corporate Defendant ABL.

To the extent that Plaintiff attempts to assert a claim against corporate Defendant ABL based upon a general theory of negligence, the law is well-settled that more than negligence is required for Plaintiff to make a valid claim under §1983. *See Smoak v. Hall*, 460 F.3d 768, 785 (6th Cir. 2006); *Yates v. City of Cleveland*, 941 F.2d 444, 447 (6th Cir. 1991). Moreover, § 1983 does not impose liability for mere violations of state tort law. *See Pope v. Trotwood-Madison City School Dist. Bd. of Educ.*, 162 F.Supp.2d 803, 812 (S.D.Ohio 2000). Absent a deprivation of Plaintiff's rights under federal law, Plaintiff cannot sustain this claim.

With regard to Plaintiff's individual capacity claims against Defendant Dulin, Senior Food Service Director, Plaintiff avers that:

> Vernestine Dulin, Food Service Director of ABL at D.C.S.O. bears
> responsibility in this complaint because she is head over the

13

> kitchen and all its workers; Jerry Mathis Sr., Vicky Jenkins, Reytchison [*sic*], and Dana Akins. She also responded to grievances from Mr. Ingram and even acknowledged (after 11 grievances) there were in fact problems that existed as last as January 2009.
>
> Mr. Ingram wrote grievances and received contradictory responses from Mrs. Dulin. Mr. Ingram met with Mrs. Dulin and her supervisor along with Mr. Austin Bodie the jail administrator at D.C.S.O. some time in June of 2008. Mrs. Dulin said she would follow up with meetings with Mr. Ingram and work to fix Mr. Ingrams [*sic*] dietary needs. To this day, July 2009, she has yet to do so.

Docket No. 66, Amended Complaint.

Inasmuch as Plaintiff seeks to impose liability upon Ms. Dulin simply "because she is head over the kitchen and all its workers," Plaintiff's claim fails, because, as has been noted, §1983 liability cannot be predicated upon the theory of *respondeat superior*. *Polk County v. Dodson*, 454 U.S. 312, 325, 102 S. Ct. 445, 454, 70 L. Ed. 2d 509 (1981). *See also, Monell v. Dep't of Soc. Serv.*, 436 U.S. 658, 694, 98 S. Ct. 2018, 2037, 56 L. Ed. 2d 611 (1978); *Street v. Corrections Corp. of America*, 102 F.3d 810, 818 (6th Cir. 1996). In order for the ABL Defendants to be held liable in their individual capacities, therefore, Plaintiff must demonstrate that each Defendant personally condoned, encouraged, or participated in the conduct that allegedly violated Plaintiff's rights. *Birrell v. Brown*, 867 F.2d 956, 959 (6th Cir. 1989) (citations omitted). *See also, Bellamy v. Bradley,* 729 F.2d 416, 421 (6th Cir. 1984) (*citing Hays v. Jefferson County,* 668 F. 2d 869, 872-74 (6th Cir. 1982) (The supervisor must have "at least implicitly authorized, approved or knowingly acquiesced in" the misconduct.) Conclusory allegations are not enough. *See Street,* 886 F.2d at 1479. *See also, Anderson,* 477 U.S. at 257; *Nix v. O'Malley,* 160 F.3d 343, 347 (6th Cir. 1998); *Lujan v. National Wildlife Fed'n,* 497 U.S.

871, 888, 110 S. Ct. 3177, 3188, 111 L. Ed. 2d 695 (1990); *McDonald v. Union Camp Corp.,* 898 F.2d 1155, 1162 (6th Cir. 1990). Plaintiff must establish a "causal connection between the misconduct complained of and the official sued." *Dunn v. State of Tennessee*, 697 F.2d 121, 128 (6th Cir. 1982).

It is undisputed that the only interaction Defendant Dulin had with Plaintiff was through the grievance process. Dulin Aff, ¶ 7. Although Plaintiff submitted grievances to, and received responses from, Defendant Dulin as the Senior Food Service Director, supervisory liability cannot be based upon the failure to act, or simply because a supervisor denied a grievance or failed to act based upon information contained in a grievance. *See Summers v. Leis,* 368 F.3d 881, 888 (6th Cir.2004); *Shehee v. Luttrell,* 199 F.3d 295, 300 (6th Cir. 1999). Merely bringing a problem to the attention of a supervisory official is not sufficient to impose liability. *See Shelly v. Johnson,* 684 F.Supp. 941, 946 (W.D. Mich.1987).

Plaintiff also avers that, after filing several grievances, he met with Defendant Dulin to discuss the issues with his trays, that she said she would work to fix the problem with his trays, and that she would follow up with him. Again, bringing a problem to the attention of a supervisory official is not sufficient to impose liability. *See Shelly,* 684 F.Supp. at 946. Neither is a failure to act. *See Summers,* 368 F.3d at 888; *Shehee*, 199 F.3d 300.

Plaintiff's filing grievances and speaking with Defendant Dulin are insufficient to demonstrate that Defendant Dulin personally condoned, encouraged, or participated in the conduct that allegedly violated Plaintiff's rights. Accordingly, Plaintiff cannot sustain his individual capacity claim against Defendant Dulin.

With regard to Plaintiff's individual capacity claims against Defendant Eytchison, Food

Service Director, Plaintiff avers that:

> Reytchison [*sic*], is or was a food service director for ABL at D.C.S.O. bears the responsibility in this complaint because she [*sic*] is a person whom should make sure certain nutritional needs are being met. He/she as [*sic*] also responded to grievance from Mr. Ingram and even acknowledged the problems existed as late as December 2008.

Docket No. 66, Amended Complaint.

As discussed above, Plaintiff cannot impose liability upon Defendant Eytchison simply because "she [*sic*] is the person whom should make sure nutritional needs are being met," or because he responded to Plaintiff's grievance or acknowledged that problems existed. It is undisputed that the only interaction Defendant Eytchison had with Plaintiff was through the grievance process. Plaintiff's grievances were answered by Defendant Eytchison on December 29 and 31, 2008. Plaintiff's allegations do not assert sufficient personal involvement by Defendant Eytchison. Plaintiff cannot sustain his claim against him.

With regard to Plaintiff's individual capacity claims against Defendant Jenkins, Assistant Food Service Director, Plaintiff avers that:

> Vicky Jenkins, food service director for ABL at D.C.S.O. bears the responsibility in this complaint because she is a person whom should make sure certain nutritional needs are being met. She has also responded to grievance from Mr. Ingram and even acknowledged the problems existed as late as March 2009.

Docket No. 66, Amended Complaint.

As discussed above, Plaintiff cannot impose liability upon Defendant Jenkins simply because "she is the person whom should make sure nutritional needs are being met," or because she responded to Plaintiff's grievance or acknowledged that problems existed. It is undisputed that the only interaction Defendant Jenkins had with Plaintiff was through the grievance process

and the delivery of food. Jenkins Aff., ¶ 6. Plaintiff's allegations do not assert sufficient personal involvement by Defendant Jenkins. Plaintiff cannot sustain his claim against her.

With regard to Plaintiff's individual capacity claims against Defendant Akins, Kitchen Supervisor, Plaintiff avers that:

> Dana Akins, food service director for ABL at D.C.S.O. bears the responsibility in this complaint because she is a person whom should make sure certain nutritional needs are being met. As late as _____ which grievances and responses will show she has not gotten my tray right for over a month.

Docket No. 66, Amended Complaint (blank in original).

As discussed above, Plaintiff cannot impose liability upon Defendant Akins simply because "she is the person whom should make sure nutritional needs are being met," or because "she has not gotten [his] trays right for over a month." It is undisputed that Defendant Akins has not interacted with Plaintiff at all. Akins Aff., ¶ 7. Plaintiff's allegations do not assert sufficient personal involvement by Defendant Akins. Plaintiff cannot sustain his claim against her.

With regard to Plaintiff's individual capacity claims against Defendant Lanius, Corporate Dietician, Plaintiff avers that:

> Bakette L, a certified dietician of ABL bears responsibility in this complaint because he/she wrote the diet and signed it for Mr. Ingram. This new menu is by no means healthy and could be problematic over time.

Docket No. 66, Amended Complaint.

Plaintiff, therefore, seeks to impose liability on Defendant Lanius because he feels that his tray menu "is not healthy" and "could be problematic over time." Plaintiff's Complaint and Amended Complaint fail to allege that Defendant Lanius' actions have actually caused him injury. In fact, while Plaintiff argues in his Supplemental Response that he suffered from

17

headaches, weight gains and losses, and sickness, he acknowledges that he "never went to medical." Docket No. 92. Moreover, it is undisputed that the diet prepared by Defendant Lanius contained 3,135 calories (Lanius Aff., ¶ 7), which is 235 calories *more* than the regular trays (Lanius Aff., ¶ 6) and 435 calories more than the 2700 calories that is adequate for a man of Plaintiff's age (Lanius Aff., ¶ 6). It is also undisputed that the Lacto-Ovo Vegetarian No-Beans Diet is an adequate diet for the maintenance of Plaintiff's good health, and is in accordance with the standards of the dietary industry. Lanius Aff., ¶ 8.

Plaintiff has failed to demonstrate that Defendant Lanius caused him an injury in fact or violated a right secured by the Constitution. Accordingly, he cannot sustain his claim against her.

In as much as Plaintiff seeks to impose liability upon these Defendants in their official capacities, Defendants cannot be held liable under § 1983 if there is no underlying constitutional violation. *See, e.g. City of Los Angeles v. Heller*, 475 U.S. 796, 799 (1986). Accordingly, Plaintiff cannot sustain § 1983 claims against Defendants in their official capacities.

## IV. Conclusion

For the foregoing reasons, the undersigned recommends that Defendants' Motion for Summary Judgment be GRANTED.

As discussed above, Plaintiff named Jerry Mathis as a Defendant, but Mr. Mathis apparently has not been served and is not a party to the instant Motion. Plaintiff's claims against Mr. Mathis, however, are based upon allegations that "he is the person who should make certain nutritional needs are being met," and Mr. Mathis responded to some of Plaintiff's grievances. For the reasons discussed above, these allegations do not state a claim upon which relief can be

18

granted against Mr. Mathis, and Plaintiff's claims against Mr. Mathis should be DISMISSED pursuant to 28 U.S.C. § 1915A(b)(1).

As also discussed above, Defendant ABL asserts that no individual named "Lon Kid" has ever worked for ABL. Docket No. 95, p. 3. Defendants made this allegation in their "Supplement to ABL's Motion for Summary Judgment." *Id.* Plaintiff did not respond to that explanation. Moreover, Plaintiff's only allegations against Defendant Kid are that, "Ms. Lon Kid, food services employee for ABL, is responsible for creating and maintaining menus," and that, "[a]s of June 2009 a new menu was created for [Plaintiff] by . . . Ms. Lon Kid." Docket No. 66, p. 3, 11. Even assuming that Ms. Kid exists and that these allegations are correct, they do not state a claim upon which relief can be granted against Ms. Kid for the reasons discussed above. Therefore, any claims Plaintiff may have against Defendant Lon Kid should likewise be DISMISSED pursuant to 28 U.S.C. § 1915A(b)(1).

Finally, the undersigned notes that if Judge Trauger accepts this Report and Recommendation, Plaintiff's claims against all Defendants will have been dismissed.

Under Rule 72(b) of the Federal Rules of Civil Procedure, any party has fourteen (14) days after service of this Report and Recommendation in which to file any written objections to this Recommendation with the District Court. Any party opposing said objections shall have fourteen (14) days after service of any objections filed to this Report in which to file any response to said objections. Failure to file specific objections within fourteen (14) days of service of this Report and Recommendation can constitute a waiver of further appeal of this Recommendation. *See Thomas v. Arn,* 474 U.S. 140, 106 S.Ct. 466, 88 L. Ed. 2d 435 (1985), *reh'g denied*, 474 U.S. 1111 (1986); 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72.

_____
E. CLIFTON KNOWLES
United States Magistrate Judge

20